UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERICO ALLEN,

       Plaintiff,                        CIVIL ACTION NO. 08-14252

       v.                               DISTRICT JUDGE ARTHUR J. TARNOW

PATRICIA CARUSO, DENNIS          MAGISTRATE JUDGE VIRGINIA M. MORGAN
STRAUB, JERRY ANN SHERRY,
LLOYD RAPELJE, and O.T. WINN,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights under the United States Constitution through their failure to prevent harm to him.  The matter comes before the court on defendants Caruso, Straub, Sherry, Rapelje, and Winn's Motion for Summary Judgment (D/E #26).  Plaintiff filed a response in opposition to that motion for summary judgment (D/E # 22).  For the reasons discussed below, this court recommends that defendants' motion be **GRANTED** and that summary judgment be entered in their favor.  While defendants are not entitled to summary judgment due to a lack of personal involvement, no genuine issue of material fact is in dispute with respect to either the objective

component or the subjective component of plaintiff's claims and defendants are therefore entitled to qualified immunity and summary judgment. Defendants are also entitled to summary judgment on plaintiff's claims for declaratory and injunctive relief due to plaintiff's lack of standing.

## II. Background

### A. Complaint

On October 6, 2008, plaintiff filed the complaint against defendants in this matter (D/E #1). In that complaint, plaintiff identifies himself as a prisoner of the state of Michigan, and in the custody of the MDOC, at the Saginaw Correctional Facility (SRF) in Freeland, Michigan. (Complaint, ¶ 19) Plaintiff also identifies defendants as employees of the MDOC: MDOC Director Patricia Caruso; MDOC Deputy Director Dennis Straub; MDOC Regional Director Jerry Ann Sherry; SRF Warden Lloyd Rapelje; and SRF Deputy Warden O. T. Winn. (Complaint, ¶¶ 20-24)

According to plaintiff's complaint, he was assigned the upper bunk in his cell at SRF and that, on May 15, 2008, he fell from a plastic chair while attempting to gain access to the bunk. (Complaint, ¶¶ 27-28) Plaintiff also alleges that he wrote a letter to defendant Rapelje the next day informing Rapelje of both the serious safety hazard associated with using the plastic chairs to gain access to the top bunks and how plaintiff nearly hurt himself. (Complaint, ¶ 29) Plaintiff further alleges that, after not receiving a response to his May 16, 2008 letter, he sent a letter to defendant Caruso on June 25, 2008 informing her of the potential safety hazard associated with having inmates access the top bunk via chairs. (Complaint, ¶ 30) According to plaintiff, he

never received a response to his second letter either. (Complaint, ¶ 31) Plaintiff also asserts that, during a Warden's Forum meeting in November 2001, the issue of providing a safe means of accessing the top bunk was brought to the attention of SRF administration, but that no action was ever taken to remedy the safety hazard. (Complaint, ¶¶ 32-33)

In his complaint, plaintiff claims that, on July 17, 2008 at approximately 3:00 a.m., plaintiff fell and severely injured his back while trying to access the top bunk and that, as a result of his fall, plaintiff had to be rushed to the hospital. (Complaint, ¶¶ 34-35) According to plaintiff, all of the defendants were in a position to remedy the safety hazard prior to plaintiff's fall and their failure to due so constituted cruel and unusual punishment in violation of the United States Constitution. (Complaint, ¶¶ 42-47, 52)

As relief, plaintiff first requests an order requiring defendants to immediately provide a safe and effective way of accessing the top bunks, an order declaring that defendants' action violated plaintiff's constitutional rights, an order declaring that defendants are not entitled to any form of immunity, and an injunction prohibiting defendants or their successors in interest from committing in the future the wrongs described in this action. (Complaint, p. 10) Plaintiff also requests compensatory and punitive damages be awarded to plaintiff against each of the defendants. (Complaint, pp. 10-11) Plaintiff further requests his costs, his fees, and any other relief required by justice. (Complaint, p. 11)

### B. Pending Motion for Summary Judgment

On January 6, 2009, defendants filed the motion for summary judgment pending before the court (D/E #14). In that motion, defendants argue that they lacked sufficient personal

involvement in the alleged constitutional violation to be held liable under § 1983.  Defendants also argue that they are entitled to qualified immunity because their actions or inaction did not violate plaintiff's constitutional rights.  Defendants further argue that plaintiff lacks standing to obtain declaratory or injunctive relief because there is not a significant risk of plaintiff falling again.

On March 2, 2009, plaintiff filed a response to defendants' motion for summary judgment (D/E #22).  In that response, plaintiff argues that, while defendants were aware of the problem with the top bunks since at least 2001, they failed to take adequate measures to cure the problem and they were deliberately indifferent to plaintiff's right to a safe living space under the Eighth Amendment to the United States Constitution.  Plaintiff also argues that a reasonable person in defendants' position would have known that defendants' conduct constituted deliberate indifference and, because defendants were in a position to rectify the problem but failed to do so, defendants' conduct is causally related to the violation of plaintiff's rights.  Plaintiff further argues that he has standing to obtain declaratory and injunctive relief because there is a danger of plaintiff be assigned a top bunk again in the future.

### III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV.  Discussion**

   **A. Personal Involvement**

To succeed in an action under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.

1995) (per curiam).  Here, defendants argue that they were not personally involved in the alleged constitutional violation and, therefore, cannot be held liable.

Defendants first argue that plaintiff merely asserts an improper *respondent superior* theory of liability.  (Defendants' Brief in Support of Motion for Summary Judgment, pp. 5-6)  A *respondeat superior* theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell,  199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).

However, while a *respondeat superior* theory of liability is not cognizable under 42 U.S.C. § 1983, defendants' argument is misplaced as plaintiff's claims are based on the alleged active unconstitutional conduct of defendants themselves rather than on their supervision of others engaging in unconstitutional conduct.  Instead of alleging that defendants are liable for the actions of any subordinates, plaintiff clearly claims that there was a substantial risk of harm to plaintiff, defendants knew of the risk, and defendants disregarded the risk.  Such claims are cognizable under 42 U.S.C. § 1983.  See, *e.g.*, Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997).

Defendants also appear to argue that they were not personally involved with the alleged constitutional violation because "[l]iability under § 1983 must be based on active unconstitutional behavior and cannot be based on 'a mere failure to act.'" (Defendants' Motion for Summary Judgment, p. 6 (quoting Shehee v. Lutrell, 199 F.3d 295, 300 (6th Cir. 1999). In Shehee, plaintiff was fired from his prison commissary job when he filed a grievance accusing his supervisors of demanding kickbacks. He then sued the supervisors as well as everyone up the chain of command who had denied his "request for administrative remedy" and had failed to take remedial action. The Sixth Circuit subsequently found that qualified immunity protected the defendants who simply denied his administrative grievances and "fail[ed] to remedy the alleged retaliatory behavior" but were not involved in the retaliatory discharge itself. Shehee, 199 F.3d at 300.

However, while the rule that "liability cannot be based on a mere failure to act" appropriately applies when a discrete violation of rights has occurred and the supervisory officials' only involvement is that they learned about it afterwards, as was the case in Shehee, the

rule does not apply to cases challenging ongoing conditions of confinement.[1]  As the Sixth

Circuit has noted,

> [t]he Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).  An Eighth Amendment conditions-of-confinement claim has two elements.  "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act **or omission** must result in the denial of the minimal civilized measure of life's necessities." *Id*. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted).  Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

Spencer v. Bouchard, 449 F.3d 721, 727-28 (6th Cir. 2006) (emphasis added).  Further, "[t]he

deliberate-indifference requirement is satisfied 'only if [the official] knows that inmates face a

---

[1] Like Shehee, the other cases cited by defendants for this issue all involve situations where the supervisors only learned about the alleged violation after it occurred.  See Summers v. Leis, 368 F.3d 881, 888 (6th Cir. 2004) (sheriff not liable for allegedly wrongful arrest of plaintiff by deputies); Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988) (supervisors not liable for sexual harassment of plaintiff by co-worker); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) (supervisory officials not liable for harassment of plaintiff by prison guards); Hays v. Jefferson County, Ky., 668 F.2d 869, 872-74 (6th Cir. 1982) (supervisors not liable for alleged use of excessive force by officers against plaintiffs); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (Bell, J.) (prison warden and MDOC director, who responded to plaintiff's grievance appeal, not liable for alleged interference with plaintiff's mail by guards); Morrison v. O'Connel, No. 93 CIV. 8852 (DLC), 1995 WL 386478, *1-2 (S.D.N.Y. June 28, 1995) (Cote. J.) (warden not liable for alleged assaults of the plaintiff by correctional officials or alleged inadequate medical care merely because he received a grievance after the alleged constitutional violations occurred).

substantial risk of serious harm **and disregards that risk by failing to take reasonable measures to abate it.**'" Spencer, 449 F.3d at 729, quoting Farmer, 511 U.S. at 847 (emphasis added). To be sure, a prison official cannot be held liable *merely* because someone he supervises has committed a constitutional violation, as there is no *respondeat superior* liability under § 1983. However, any prison official, whether or not he occupies a position with supervisory authority, can be held liable if he is aware that an inmate's health or safety is seriously at risk and, despite such knowledge, "fail[s] to take reasonable measures to abate" the risk. As the court explained in Spencer,

> "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs- e.g., food, clothing, shelter, medical care, and reasonable safety-it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (emphases added); . . . The obligation to "provide" these basic needs would have no meaning if a prison official could fail to provide them and then evade liability simply by pleading that he "failed to act." That is why the Supreme Court has explicitly stated that a prisoner's Eighth Amendment claim may be based on "a prison official's act or omission." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (emphasis added); *see also id.* at 836, 114 S.Ct. 1970 (discussing "acting or *failing to act* with deliberate indifference" (emphasis added)).

Spencer, 449 F.3d at 730-31 (footnote omitted). In other words, in a conditions-of-confinement case liability can be based on action, *i.e.* subjecting an inmate to unconstitutional conditions, as

well as inaction, *i.e.* failing to remedy or to remove the inmate from such conditions), and defendants' argument to the contrary must be rejected.[2]

### B. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity as to all the claims against them. (Defendants' Motion for Summary Judgment, pp. 7-9) Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, --- U.S. ---, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate

---

[2]Defendants also cite to Wright v. Smith, 21 F.3d 499, 501 (2d. Cir. 1994) for the proposition that the mere receipt of a letter complaining about conditions of confinement is not enough to impose liability on a supervisory official where there are no allegations that the official created a policy or custom under which the violations occurred. However, the Second Circuit did not uphold the dismissal of a claim against the warden in that case because the warden only received a letter. Rather, the Second Circuit examined the contents of the letter and found that it failed to put the warden on actual or constructive notice of any violation. See Wright, 21 F.3d at 501.

clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Here, defendants argue that no genuine issue of material fact exists with respect to plaintiff's claim that they failed to prevent harm to him and that, consequently, they are entitled to qualified immunity and summary judgment.[3] To establish liability under the Eighth Amendment, as incorporated against the states by the Fourteenth Amendment, for a claim based on a failure to prevent harm to a prisoner, a plaintiff must prove that the defendant(s) acted with "deliberate indifference" to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir.

---

[3]This court would note that defendants do not argue that, even if there was a constitutional violation, the relevant constitutional right was not clearly established. Consequently, this court will not address that prong of the qualified immunity.

1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). This test involves both a subjective and objective component. Farmer, 511 U.S. at 834; Woods, 110 F.3d at 1222, and defendants make arguments with respect to both of those components in this case.

The objective component requires that the deprivation alleged must be "sufficiently serious." Farmer, 511 U.S. at 834 (citation omitted). "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. See also Woods, 110 F.3d at 1222.

Here, this court concludes that plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to the objective component of plaintiff's claim. Plaintiff has not provided evidence that, when viewed in the light most favorable to him, demonstrates that there was a substantial risk of serious harm to inmates generally, or to himself specifically. As provided in plaintiff's own letters, he was assigned a top bunk for at least two months and he only fell twice. Moreover, Rapelje's affidavit indicates that, while there are 730 inmates at SRF assigned to top bunks, there are no regular complaints about top bunk assignments. (Affidavit of Lloyd Rapelje, ¶ 6; attached as Exhibit 4 to Defendants' Motion for Summary Judgment) Furthermore, while the issue of access to the top bunks was raised by inmates at Warden's Forum meetings in November 2001 and September 2008, the minutes for those meetings do not indicate that the issue was raised due to safety concerns rather than as a matter of comfort. (Memorandum regarding II/IV Warden's Forum Meeting, November 16, 2001, attached as an Exhibit to the Complaint; Memorandum regarding II/IV Warden's Forum Meeting, September 18, 2008, attached to Exhibit 5 of Defendants' Motion for Summary Judgment) Uncomfortable

prison conditions do not automatically create a Eighth Amendment violation, Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004), and the evidence in this case, even when viewed in a light most favorable to plaintiff, does not does not show that plaintiff was incarcerated under conditions posing a substantial risk of serious harm.  Consequently, no rational trier of fact could find for plaintiff and defendants are entitled to qualified immunity and summary judgment.

Even if plaintiff did demonstrate that a genuine issue of material fact exists with the objective component of his claim, defendants would still be entitled to summary judgment if no rational trier of fact could find for plaintiff with respect to the subjective component of his claims.  To satisfy the subjective requirement, plaintiff must show that the appellees had "a sufficiently culpable state of mind"and. under the standard set by the Supreme Court, a sufficiently culpable state of mind means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see also LeMarbe v. Wisneski, 266 F.3d 429, 435 (6th Cir. 2001).  As stated in Farmer:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.  We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  Even if the defendant draws such an inference, he is not liable if he took reasonable steps to avert the harm.  Hadix, 367 F.3d at 525.  Negligent exposure to a risk is

not sufficient to create an Eighth Amendment violation. Farmer, 511 U.S. at 835-36. Rather, deliberate indifference can best be compared to criminal law's "subjective recklessness." Farmer, 511 U.S. at 839-40.

In this case, assuming *arguendo* that plaintiff was incarcerated under conditions posing a substantial risk of serious harm, there is no direct evidence demonstrating that defendants' knew that plaintiff's living conditions presented such a risk. To the contrary, the only direct evidence comes from defendants' affidavits and, in those affidavits, each defendant indicated that he or she did not know of the allegations found in plaintiff's complaint prior to plaintiff's fall. (Affidavit of Patricia Caruso, ¶¶ 7-11, attached as Exhibit 1 to Defendants' Motion for Summary Judgment; Affidavit of Dennis M. Straub, ¶¶ 5-8, attached as Exhibit 2 to Defendants' Motion for Summary Judgment; Affidavit of Jeri Ann Sherry, ¶¶ 4-5; attached as Exhibit 3 to Defendants' Motion for Summary Judgment; Affidavit of Lloyd Rapelje, ¶¶ 3-6, attached as Exhibit 4 to Defendants' Motion for Summary Judgment; Affidavit of Obell T. Winn, ¶¶ 3-5)

Plaintiff also fails to present sufficient circumstantial evidence to create an issue of fact as to whether defendants knew about any substantial risk of serious harm. Regarding defendants Straub, Sherry and Winn's purported knowledge, plaintiff attached minutes from a Warden's Forum meeting held in 2001 in which the following question was raised:

> 8. The Forum believes the facility should provide some sort of step for prisoners assigned to top bunks. Most prisoners use chairs, but these are not sturdy enough for some prisoners. Can some type of solution be discussed?

> **Response:    Suggestions are sought from the Prisoner Reps.**

(Memorandum regarding II/IV Warden's Forum Meeting, November 16, 2001, p. 3; attached as an Exhibit to the Complaint (emphasis in original))  Plaintiff also asserts that copies of those minutes were provided to defendants Straub, Sherry, and Winn:

> As Deputy Director of the MDOC, Defendant Straub is responsible for the oversight of the prison operations in Michigan.  As such, it is his responsibility to review the complaints made in the Warden's Forum meeting minutes sent to the Director's Office.  Defendant Straub, therefore, received notice of the hazardous condition.
>
> As the RPA or regional director of the region in which the Saginaw facility resides, Defendant Sherry is responsible for the oversight of the operation of the Saginaw facility.  By virtue of the chain of command, a copy of the forum minutes from the Saginaw facility are provided to her too, Therefore, Defendant Sherry received notice of the hazardous condition.
>
> As the Deputy Warden of the Saginaw facility, Defendant Winn is the on-site frontline administrator responsible for the operation of the facility.  As such, he is made aware of the existing hazard by the prisoners and the warden's forum representatives.  Therefore, Defendant Winn received notice of the hazardous condition.

(Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 4)

Nevertheless, plaintiff's assertions that Straub, Sherry and Winn were all informed of the alleged hazard are completely unsupported and plaintiff does not provide any evidence suggesting that the minutes of the meeting were forwarded to Straub, that the "chain of command" lead to the minutes be provided to Sherry, or that Winn was made aware of any alleged problems simply because he is "the on-site frontline administrator responsible for the operation of" SRF.  The minutes themselves identify the prison officials who were present at the

meeting and those officials who were to be "cc"-ed the memorandum, but Straub, Sherry and Winn were not listed on either of those two parts. (Memorandum regarding II/IV Warden's Forum Meeting, November 16, 2001, attached as an Exhibit to the Complaint) Moreover, according to Straub's affidavit, he was warden at the G. Robert Cotton Correctional Facility at the time of the Warden's Forum at SRF and not yet the Deputy Director of the MDOC. (Affidavit of Dennis M. Straub, ¶ 3; attached as Exhibit 2 to Defendants' Motion for Summary Judgment)

With respect to defendants Caruso and Rapelje, plaintiff's evidence consists of two letters addressed to those defendants describing the alleged safety hazard and dated prior to plaintiff's fall. (Letters; attached as Exhibits to Plaintiff's Complaint) However, plaintiff provides no evidence suggesting that such letter were written or mailed as he alleged in his complaint. Plaintiff attaches no proof of mailing or service, and there is nothing to suggest that he raised this matter in any other way. In response to those letters, Caruso's affidavit states that she does not recall and has no record of receiving any correspondence form plaintiff, and that prisoner mail addressed to the Director of the MDOC, such as plaintiff's letter to her, is actually opened by the Central Office staff and forwarded to the appropriate area. (Affidavit of Patricia Caruso, ¶ 7; attached as Exhibit 1 to Defendants' Motion for Summary Judgment) Caruso's affidavit also states that she ordered a search of plaintiff's central office file and there is no record of a June 25, 2008 letter addressed to her. (Affidavit of Patricia Caruso, ¶ 8; attached as Exhibit 1 to Defendants' Motion for Summary Judgment) Similarly, Rapelje's affidavit provides that the May 16, 2008 letter addressed to him and attached to plaintiff's complaint was

never received by his office. (Affidavit of Lloyd Rapelje, ¶ 3; attached as Exhibit 4 to Defendants' Motion for Summary Judgment)

Even viewing the above evidence and drawing all reasonable inferences in favor of plaintiff, as the court must, Matsushita, 475 U.S. at 587, no reasonable trier of fact could find that defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff exists. As discussed above, all of the direct evidence provides that defendants did not know that plaintiff's living conditions presented such a risk, assuming *arguendo* that plaintiff was incarcerated under conditions posing a substantial risk of serious harm. Moreover, plaintiff's minimal circumstantial evidence also fails to demonstrate the existence of a genuine issue of material fact. In light of the absence of a genuine issue of material fact with respect to the subjective component of plaintiff's claims, defendants are also entitled to qualified immunity and summary judgment on that basis.[4]

### C. Declaratory and Injunctive Relief

Defendants further argue that plaintiff lacks standing to obtain declaratory or injunctive relief. A plaintiff has Article III standing when he or she can show: (1) an injury-in-fact that (2) was "fairly traceable to the defendant's allegedly unlawful conduct" and (3) is "likely to be redressed" via a favorable decision. Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 349 (6th Cir. 2007) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

---

[4]This court would note that defendants Caruso and Rapelje do not argue that the letters lacked facts from which the inference could be drawn that a substantial risk of serious harm existed or that they themselves failed to draw such an the inference. Consequently, this court will not address those requirements for plaintiff's claims.

L.Ed.2d 351 (1992)). The only question in this dispute is whether plaintiff has shown an "injury-in-fact," or "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted). In applying the first requirement of a concrete injury, the Supreme Court made clear that a plaintiff is not entitled to injunctive or declaratory relief "[a]bsent a sufficient likelihood that he will again be wronged in a similar way," City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), unless the plaintiff is subject to "continuing, present adverse effects," O'Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). See also Schultz v. U.S., 529 F.3d 343, 349 (6th Cir. 2008).

Here, while defendants incorrectly focus on the risk of plaintiff falling again rather than the risk of plaintiff's rights be violated in the future, Rapelje's affidavit does provide that plaintiff was assigned a bottom bunk pursuant to a medical detail on August 9, 2008. (Affidavit of Lloyd Rapelje, ¶ 7 (citing to History of Cell Usage, attached to affidavit); attached as Exhibit 4 to Defendants' Motion for Summary Judgment) Plaintiff offers no evidence in his response suggesting that he is at risk of being put in a top bunk again. Given the medical detail restricting plaintiff to a bottom bunk, as well as plaintiff's lack of evidence to the contrary, this court finds that plaintiff has failed to show a sufficient likelihood that he will again be wronged in a similar way and defendants are entitled to summary judgment on plaintiff's request for declaratory and injunctive relief.

## V. Conclusion

For the reasons discussed above, this court recommends that defendants' motion be **GRANTED** and that summary judgment be entered in their favor. While defendants are not entitled to summary judgment due to a lack of personal involvement, no genuine issue of material fact is in dispute with respect to either the objective component or the subjective component of plaintiff's claims and defendants are therefore entitled to qualified immunity and summary judgment. Defendants are also entitled to summary judgment on plaintiff's claims for declaratory and injunctive relief due to plaintiff's lack of standing.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                    S/Virginia M. Morgan
                    Virginia M. Morgan
                    United States Magistrate Judge

Dated: August 28, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on August 28, 2009.

                    s/J. Johnson
                    Case Manager to
                    Magistrate Judge Virginia M. Morgan